## Glaes v. Glaes.

*J. R. Evans, D. L. Evans* and *H. Bartman,* for libellant.

WILLIAMS, P. J., Dec. 13, 1928.—The master was selected by authority of the Act of May 8, 1919, P. L. 164-7, Section One (1), P. L. 166, of which says: ". . . the court . . . may, upon motion of either party, appoint a master to take the testimony and return the same to the court, together with a report of the proceedings had before him and his opinion of the case . . ."

It is to be noted the quoted part of the statute is not mandatory; that is, the court is not required to appoint a master.

The purpose of the ordainment of a master is to spare the judicial tribunal the time-consuming and patience-exhausting task of presiding at hearings and to give the body entrusted with the administration of justice the benefit of the opinion of one learned in law and devoid of interest in the ultimate outcome of the litigation referred to him. Judges do not appoint masters by reason of motives of liberality or out of desire to help members of the bar secure special compensation. On the contrary, the sole object of the designation of a master in divorce is to insure the taking of the necessary preliminary steps under the direct supervision of an officer in whom the court has full faith and special confidence.

Hence, it is well within the scope of appointment for a master to make his report in the order of logical sequence. While neither acts of assembly nor rules of court require the master to attach to his report the original papers, nevertheless, since from time immemorial it has been the practice of masters in this district so to do, it behooves every master, if his labor is to reach the aim of designation, to arrange his report in such a way that the statement presented by him may be perused from beginning to end with reasonable succession and continuity. Hit-or-miss compilation of the results of investigation increases the time and effort demanded of a judge for due consideration. The manner in which the instant report is put together suggests hurry and thoughtlessness, if not real carelessness, on the part of the master and defeats, in a measure, the very objective of his appointment.

A more basic and fundamental defect of the report is the complete overlooking by the master of the existence of one of the grounds for divorce set forth in the libel. The officer of the court advises the cause of divorce as alleged in the petition to be cruel and barbarous treatment. Obviously, here is an error of omission on the part of the master, who has ignored entirely the charge of indignities to the person contained in the petition. By way of recommendation, the master states the averment of the libel has been sustained. Surely, the recommendation cannot be the result of straight thinking, for the report is silent, both in findings of fact and conclusions of law, as to the ground of indignities to the person of the libellant.

With regret, therefore, the report must be returned to the master. It is suggested he consider carefully the charge of indignities by the respondent to the person of his wife. It is suggested, also, the master report to the court when and by whom the words "and, therefore, forced her to withdraw from his house and family" appearing in the petition were lined out in ink. To say the least, such an informal method of amending a libel in divorce is a curiously interesting novelty. To say more but not necessarily the most, the attempted reformation of the pleading may have been highly improper.

And now, this 13th day of December, 1928, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows: The case is referred back to the master, who will proceed promptly to consummate the suggestions hitherto offered.

From Aaron S. Swartz, Jr., Norristown, Pa.